547 F.2d 938
 WELLS FARGO ARMORED SERVICE CORPORATION, Plaintiff-Appellant,
v.
GEORGIA PUBLIC SERVICE COMMISSION, Individually and in their
official capacities, and ARC Armored Service,
Inc., Defendants-Appellees.
 No. 76-1866
 
 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Feb. 28, 1977.
 H. E. Miller, Jr., Atlanta, Ga., for plaintiff-appellant.
 R. Joseph Costanzo, Jr., Theodore M. Forbes, Jr., Wm. L. Spearman, Atlanta, Ga., for ARC Armored Service, Inc.
 Arthur K. Bolton, Atty. Gen., Lois F. Oakley, R. Douglas Lackey, Asst. Attys. Gen., Atlanta, Ga., for Ga. Public Service Comm.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before GODBOLD, HILL and FAY, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 The Georgia Public Service Commission (GPSC), after a hearing, approved the application of ARC Armored Service, Inc., for a class "M" irregular route intrastate motor carrier certificate pursuant to Ga.Code Ann. §§ 68-501 et seq. The plaintiff, Wells Fargo Armored Service Corp., which holds a similar certificate for the same eight-county area, was a protestant in the GPSC hearing. Wells Fargo brought this § 1983 suit in federal court[1] to enjoin ARC's operations under its certificate, alleging that flaws in the hearing process denied to it procedural due process. The district court upheld Wells Fargo's standing to object to the GPSC order, and held that it had subject matter jurisdiction. It dismissed the suit on the merits, on the basis that "the holder of a non-exclusive franchise does not possess a right protected by the fourteenth amendment to be free from competition," citing Tennessee Electric Power Co. v. TVA, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939), and Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938), as well as Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). On Wells Fargo's motion to reconsider, the court held that even though Wells Fargo had a right protected by the fourteenth amendment, i. e., in the form of its own certificate, that right was not involved here. The GPSC order "does not directly affect the value of the existing carrier's certificate. . . . (O)ne must focus on the precise property interest affected in considering whether that interest is protected by the due process clause of the fourteenth amendment."
 
 
 2
 We affirm the dismissal of the action based on the clear import of the Roth line of cases.[2] The due process clause protects only against a deprivation of liberty or property interests. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561; accord, Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Thurston v. Dekle, 531 F.2d 1264 (CA5, 1976). To generate a due process claim, Wells Fargo must first demonstrate that it holds an interest arising out of some understanding with the state of Georgia that transcends "an abstract need or desire" or "a unilateral expectation" and qualifies as "a legitimate claim of entitlement." Roth, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Entertaining the hope of being free from competition is not enough on this score. Georgia law[3] expressly rejects the notion that the award of a state certificate of public convenience and necessity entitles the motor carrier to anything more than the conduct of its own operation between designated points and places carrying authorized commodities.[4]
 
 
 3
 Wells Fargo acknowledges the foregoing state of the law but asserts instead that a property interest entitling it to the protections of the due process clause arises from its own certificate of public convenience and necessity. Privileges, licenses, certificates, and franchises now do qualify as property interests for purposes of procedural due process. See Bell v. Burson,402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). But due process only becomes relevant where such property is "deprived" e. g., where welfare benefits are terminated, Goldberg, supra ; where public employees are discharged, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); or where licenses are revoked, Bell v. Burson, supra.
 
 
 4
 Of course, the extent of the injury is irrelevant except for determining what process is due, Goss v. Lopez, supra, and as a result even a temporary seizure of intangibles invokes due process considerations. North Georgia Finishing, Inc. v. Di-Chem, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). But Georgia has not terminated Wells Fargo's motor carrier certificate. Rather, the state has simply given Wells Fargo a competitor. The due process clause becomes relevant when such indirect injuries effectively render the property valueless. Cf. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). But this sort of judicial scrutiny of governmental regulation only incidentally impinging on property rights is limited. Cf. Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).[5] The mere entry of another motor carrier into Wells Fargo's territory is too insubstantial an injury to its existing, non-exclusive certificate to constitute a deprivation in the constitutional sense. See U. S. v. Dixie Highway Express, 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639, 642 (1967) (per curiam); accord, Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447, 463 (1974) (rejecting the notion that existing ICC carriers have a property right to an opportunity to remedy deficiencies in their service before new certificates issue); Gentry v. Howard, 365 F.Supp. 567, 572 (W.D.La.1973); Anderson Motor Service v. U. S., 151 F.Supp. 577, 583 (E.D.Mo.1957).
 
 
 5
 One final point. Wells Fargo also appears to base its allegation of a property deprivation in various procedural guarantees of the Georgia motor carrier code. It makes little sense to base a property interest on these procedural guarantees, since Wells Fargo has an opportunity to vindicate such "rights" in state court.[6] "Procedural protections . . . do not determine whether a property right exists." Suckle v. Madison General Hospital, 499 F.2d 1364, 1366 (CA7, 1974). See also Lake Michigan College Federation of Teachers v. Lake Michigan Community College, 518 F.2d 1091, 1095-96 (CA6, 1975), cert. denied, 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976).[7] Neither can the claim that the GPSC order was "arbitrary, unreasonable and capricious"[8] survive a motion to dismiss, absent an allegation that this arbitrariness resulted in a deprivation of a Roth property right.
 
 
 6
 Wells Fargo alleged no deprivation of a cognizable property interest, so it stated no claim of a procedural due process violation. The trial court's order dismissing the complaint is
 
 
 7
 AFFIRMED.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I
 
 
 [1]
 This suit was filed on the same day that Wells Fargo petitioned GPSC for a rehearing of its order. We assume this petition was denied. At any rate, exhaustion of available administrative remedies is not a prerequisite to suit under § 1983. See Sparks v. Griffin, 460 F.2d 433, 442 (CA5, 1972); Hobbs v. Thompson, 448 F.2d 456, 461 (CA5, 1971) (dictum). Compare Gibson v. Berryhill, 411 U.S. 564, 575-576, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488, 497-98 (1973) with id., at 580-581, at 1698-99, 36 L.Ed.2d at 501-02 (Marshall, J., concurring). See also McCray v. Burrell, 516 F.2d 357 (CA4, 1975) (en banc), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976)
 Wells Fargo could have sought relief from the GPSC order by resort to state court. Ga.Code Ann. § 93-211. As a result, there exist additional questions about the discretion of the federal court to entertain this suit. The district court considered and rejected any possible application of Burford or Pullman abstention. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). We agree that the policies underlying these cases are inapposite here. Also, exhaustion of state judicial remedies is unnecessary in § 1983 cases. Hall v. Garson, 430 F.2d 430, 435-36 (CA5, 1970); Hobbs, supra.
 
 
 [2]
 Much of the argument below concerned the relative applicability of Frost v. Corporation Comm'n, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929), vis-a-vis Tennessee Electric and Alabama Power. The issue was whether this case, like Frost, involves licensing of "unlawful" competition, even though here the alleged unlawfulness concerns procedural rather than substantive due process. Although it is difficult here to distinguish between the question of standing to sue and that of the existence of a property right, we believe that these three cases were standing and not due process cases. We view them as articulations of an earlier rule of standing that required not simply "injury in fact" but "legal injury." See 3 K. Davis, Administrative Law Treatise § 22.04, at 217-18 (1958). See also Hardin v. Kentucky Utilities Co., 390 U.S. 1, 5-6, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968). Whatever their continued validity after Association of Data Processing Serv. Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), they are irrelevant to our decision. Standing is no longer an issue in this case
 
 
 [3]
 "Nothing in this or any previous law shall be construed to vest in the owner . . . of any certificate of public convenience and necessity any vested right to use the public roads of this State, nor shall ever be construed to give to any motor carrier for hire any perpetual franchise over such public roads."
 Ga.Code Ann. § 68-524. In terms of the requirements for due process, it does not matter whether the owner's property interest is characterized as a "vested right." Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). For purposes of this appeal, however, we need only point out that the statute does not afford a right to be free from competition.
 
 
 [4]
 Wells Fargo apparently also claims that the statutory findings prerequisite to the award of a certificate to its competitor constitute a legitimate expectation which cannot be deprived (i. e., unfavorably resolved) without certain safeguards. Ga.Code Ann. § 68-504(f) provides in pertinent part:
 "In determining whether such certificate of public convenience and necessity shall be granted, the commission, among other things, shall consider the following:
 "(1) Whether existing transportation service of all kinds is adequate to meet the reasonable public needs;
 "(2) The volume of existing traffic over such route, and whether such traffic and that reasonably to be anticipated in the future can support already existing transportation agencies and also the applicant;
 "(5) The effect on existing transportation revenues and service of all kinds, and particularly whether the granting of such certificate will or may seriously impair essential existing public service."
 From what we have said above about the right to be free from competition, it follows that Wells Fargo's expectancy in these findings, unlike ARC's, clearly is not of constitutional dimension.
 
 
 [5]
 This "petty larceny" doctrine has arisen in substantive due process and taking cases. See generally Maher v. City of New Orleans, 516 F.2d 1051 (CA5, 1975), cert. denied, 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976). We think the concept equally applicable where party A complains about government decisionmaking in favor of party B. We are essentially asking a similar question: has A's property been acted upon so drastically that A has been "deprived" of it? Whether the property is deprived by an unfair hearing, as alleged here, or by arbitrary legislative act, makes no difference in the answer to this question. See Jeffries v. Turkey Run Consol. School Dist., 492 F.2d 1, 4 (CA7, 1974) (Stevens, J.). See also Joiner v. City of Dallas, 380 F.Supp. 754, 771 n.18 (N.D.Tex.), aff'd mem., 419 U.S. 1042, 95 S.Ct. 614, 42 L.Ed.2d 637 (1974):
 "Not every administrative act gives rise to a constitutional right of participation under the Due Process Clause. Traditionally due process requires (that) an affected individual be given the right of participation, whether by a hearing or otherwise, only when the administrative act complained of directly affects a zone of interest protected by the constitution."
 
 
 [6]
 We do not rule on the question whether GPSC violated the procedural requirements of Ga.Code Ann. §§ 68-504, 505, and 507, or GPSC Motor Carrier Rule 91
 
 
 [7]
 Nor, according to a majority of the justices of the Supreme Court, do such protections limit the constitutional due process requirements for safeguarding property rights once established under state law. See the various opinions in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)
 
 
 [8]
 We note that this is the standard of review of GPSC orders prescribed by the Georgia courts. See J. & M. Transp. Co. v. Georgia Pub. Serv. Comm., 217 Ga. 296, 122 S.E.2d 227, 228 (1961). This, too, is thus a question of state law